UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA
Filed/Docketed
Aug 11, 2020

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **IN RE:**<br><br>**SHELDON E. LANDON,**<br><br>**Debtor.** | **Case No. 19-11005-M**<br>**Chapter 7** |
| **DANIEL B. FORD, JR.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**SHELDON E. LANDON,**<br><br>**Defendant.** | **Adversary No. 19-01039-M**<br>**(consolidated with Adv. 19-01040-M and 19-01041-M)** |
| **BLAIR M. TINGLEY,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**SHELDON E. LANDON,**<br><br>**Defendant.** | **Adversary No. 19-01040-M** |
| **JEFFREY S. ROBBINS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**SHELDON E. LANDON,**<br><br>**Defendant.** | **Adversary No. 19-01041-M** |

## MEMORANDUM OPINION

Before the Court is the Motion for Summary Judgment (the "Motion"),[1] filed by Daniel B. Ford, Jr. ("Ford" or "Plaintiff"); a Response,[2] filed by Sheldon E. Landon ("Defendant" or "Landon"); and a Reply,[3] filed by Plaintiff. Ford holds a state court judgment against Landon and filed this adversary proceeding to except it from discharge in Landon's present bankruptcy case. The following findings of fact and conclusions of law are made pursuant to Federal Rule of Bankruptcy Procedure 7056.

### Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b),[4] and venue is proper pursuant to 28 U.S.C. § 1409. Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a). Determination as to the dischargeability of a debt is a "core" proceeding as that term is defined in 28 U.S.C. § 157(b)(2)(I).

### Summary Judgment Standard

The United States Court of Appeals of the Tenth Circuit has held that

> Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the

---

[1] Docket No. 12. This adversary proceeding was previously consolidated with Adv. Proc. Nos. 19-01040-M and 19-01041-M. All references to the docket are to Adv. Proc. No. 19-01039-M, unless stated otherwise.

[2] Docket No. 15.

[3] Docket No. 30.

[4] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*.

> claim." *Id*. Put differently, "[t]he question . . . is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (quotation omitted). "On summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quotation omitted).

The Court will apply this standard to the Motion.

**Findings of Fact**

Ford is an individual who resides in Massachusetts and a judgment creditor of Landon. On May 14, 2019, Landon filed a petition for relief under chapter 7 of the United States Bankruptcy Code, Case No. 19-11005-M.

In 2014, Landon filed suit against Ford in Massachusetts in Barnstable Probate and Family Court (the "Probate Court"), Docket No. BA14E0063QC, alleging claims that Ford breached duties he owed to Landon, who was the beneficiary of a certain trust over which Ford was trustee (the "Probate Action"). On April 27, 2017, after three years of litigation, the Probate Action came on for trial. That same morning, Landon claimed to experience a medical episode and the Probate Action trial was not conducted. On May 2, 2017, Ford filed a motion to dismiss the Probate Action, arguing that Landon's actions throughout the three-year litigation, including her misconduct and misrepresentations to court staff on April 27, 2017, constituted a fraud upon the Probate Court. On August 3, 2017, the Probate Court sustained Ford's motion to dismiss with prejudice, and entered an order detailing the events of April 27, 2017, and others that occurred during the litigation.[5] On motion of Ford, the Probate Court later amended its order (the "Probate Order")[6]

[5] Amended Judgment of Dismissal, Docket No. 44-9, at 202.

[6] Docket No. 44-9, at 246.

to add an award of attorney's fees to Ford (the "Fee Award") as compensation for time spent preparing for and litigating the matter on April 27, 2017. With regard to the Fee Award, the Probate Order stated the following:

> The Court agrees that, given the Plaintiff's conduct in this case, an award of attorney's fees is reasonable and appropriate. The Court does not agree with the Plaintiff [sic][7] that the case "*was sham litigation ab initio*." Rather, the Court finds that the Plaintiff's Complaint was filed by her in good faith based upon her belief that the Defendant breached his fiduciary duty to her. In fact, on January 22, 2016, the Court allowed Plaintiff's Motion for Summary Judgment as to one issue in dispute. That said, the Plaintiff's conduct throughout the case was difficult, to say the least. She ignored the Discovery Master, and ignored several discovery rulings by the Court. In the end she orchestrated a ploy, and a scene at the Courthouse, to avoid litigation. As a result, the Defendant's [sic] incurred unnecessary expenses to prepare for litigation and appear for trial.
>
> * * *
>
> Using the same hourly rate, the Court finds that counsel for the Defendant was in Court on April 27, 2017 approximately five hours, with two hours of travel time to and from Boston to Barnstable, Massachusetts, for a total of seven (7) hours. The Court also finds that a reasonable period of time for trial preparation would be a minimum of six (6) hours. Accordingly, the Court orders the Defendant [sic][8] to pay legal fees to the Defendant in the amount of $11,635.00 for counsel's appearance in Court on April 27, 2017 and for six (6) hours of trial preparation. The request for additional fees is denied. This was a legitimate equity complaint filed by the Plaintiff that was ultimately dismissed because of her fraudulent conduct leading up to the trial.
>
> In making an award of attorney's fees, the Court must focus on various factors, including: "the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation, and ability of the attorney[s], the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases." Linthicum v. Archambault, 379 Mass. 381, 388-3889 [sic] (1979). "No one factor is determinative, and a factor-by factor analysis, although helpful, is not required.

[7] Landon was the plaintiff in the Probate Action. It appears that the Probate Court intended to reference Ford, as the defendant in that action. Because of the confusion created by the Probate Court's use of these identifiers, this Court will use the parties' surnames where possible.

[8] Again, the tenor of the Probate Order makes it clear that the Probate Court intended to reference Landon, as the plaintiff in that action.

> Berman v. Linnane 434 Mass. 301, 303 (2001). I find that given the complexity of the case and the rates charged by similarly experienced attorneys in the Boston area, the hourly rate of defendant's counsel, although high, is not unreasonable. I also find that an award of fees for thirteen (13) hours is appropriate under the circumstances presented here.[9]

The Probate Order is currently on appeal by Landon.[10]

**Conclusions of Law**

Ford filed this adversary proceeding asserting that the Fee Award included in the Probate Order should be excepted from discharge pursuant to § 523(a)(6). In the Motion, Ford alleges that facts necessary to support a finding of non-dischargeability have been established by the Probate Order, and that this Court is prevented from reconsidering those issues under the doctrines of both claim preclusion and issue preclusion. Landon appears to object to many of the factual findings made by the Probate Court in the Probate Order and believes that no preclusion doctrines can apply because the order is currently subject to appeal.

The validity of a creditor's claim is determined by rules of state law.[11] When a federal court reviews the preclusive effect of a state court judgment, the full faith and credit statute directs a federal court to look to the preclusion law of the state in which the judgment was rendered.[12] Because the Probate Order was issued by a Massachusetts state court, I must decide what, if any, preclusive effect Massachusetts courts would accord the Probate Order. Massachusetts law

---

[9] Probate Order, Docket No. 44-9 at 246, 251-52.

[10] Notice of Appeal, Docket No. 44-9, at 256.

[11] *Grogan v. Garner*, 498 U.S. 279, 283 (1991).

[12] 28 U.S.C. § 1738. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005); *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (citing 28 U.S.C. § 1738).

recognizes two forms of preclusion presented by previous judgments: 1) claim preclusion, and 2) issue preclusion.[13]

*1. Claim preclusion*

"Claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and prevents relitigation of all matters that were or could have been adjudicated in the action."[14] The elements of claim preclusion under Massachusetts law are: "(1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits."[15] The first element is clearly met here: Ford and Landon were both parties to the Probate Action. Ford's argument stumbles on the second element. The issue before the Probate Court was whether Landon should be sanctioned for her behavior before that court. The issue before this Court is whether that sanction award should be discharged in her bankruptcy case. Since *Brown v. Felsen*, the United States Supreme Court has been clear that *liability for a debt* and the *dischargeability of a debt* are sufficiently different legal claims that claim preclusion will not prevent a bankruptcy court from reviewing the judgment and record in a prior state court proceeding and looking beyond them when considering the dischargeability of a debt.[16] Because Ford's claim of non-dischargeability was not litigated in the Probate Action, he has not met his

[13] *Kobrin v. Bd. of Registration in Med.*, 832 N.E.2d 628, 634 (Mass. 2005).

[14] *Id.* (citations omitted).

[15] *DaLuz v. Dept. of Correction*, 746 N.E.2d 501, 505 (Mass. 2001).

[16] *Brown v. Felsen*, 442 U.S. 127, 138–39 (1979) ("[W]e hold that the bankruptcy court is not confined to a review of the judgment and record in the prior state-court proceedings when considering the dischargeability of respondent's debt."). *See also In re Colokathis*, 417 B.R. 150, 157 (Bankr. D. Mass. 2009).

burden to show that claim preclusion applies to this case.[17] The Court does not find grounds to grant summary judgment on the basis of claim preclusion.

*2. Issue preclusion*

Courts use the doctrine of issue preclusion to prevent the relitigation of issues or facts raised in a second suit on a separate claim between the parties. It is settled law that "the doctrine of issue preclusion, does, under appropriate circumstances, apply in discharge exception proceedings pursuant to § 523(a)."[18] In Massachusetts,

> collateral estoppel precludes relitigation of issues in prior actions between the parties or those in privity with those parties, provided the issues were actually litigated in the first action, and determined by a "final judgment on the merits." *Smith Barney, Inc. v. Strangie (In re Strangie),* 192 F.3d 192, 194 (1st Cir.1999). To apply the doctrine, a court must determine that: (1) there was a valid and final judgment on the merits in the prior adjudication; (2) the party against whom estoppel is asserted was a party (or in privity with a party) to the prior litigation; (3) the issue in the prior adjudication is identical to the issue in the current litigation; and (4) the issue in the prior litigation was essential to the earlier judgment. *Alba v. Raytheon Co.,* 441 Mass. 836, 809 N.E.2d 516, 521 (2004) (citations omitted). The Supreme Judicial Court of Massachusetts has noted that "the 'guiding principle' in determining whether to allow a party to use collateral estoppel is whether the party against whom it is asserted had a 'full and fair opportunity to litigate the issue in the first action or [whether] other circumstances justify affording him an opportunity to relitigate the issue.'" *Treglia v. MacDonald,* 430 Mass. 237, 717 N.E.2d 249, 253 (1999) (quoting *Martin v. Ring,* 401 Mass. 59, 514 N.E.2d 663 (1987)).[19]

---

[17] Because the Court determines that the doctrine of claim preclusion does not apply, it does not reach the element of finality.

[18] *Grogan v. Garner*, 498 U.S. 279, at 285 n.11 (1991).

[19] *In re Swasey*, 488 B.R. 22, 33 (Bankr. D. Mass. 2013) (quoting *Backlund v. Stanley-Snow (In re Stanley-Snow)*, 405 B.R. 11, 18 (1st Cir. BAP 2010). *See also In re Porcaro*, 545 B.R. 384 (1st Cir. BAP 2016); *Kobrin v. Bd. of Registration in Med.*, 832 N.E.2d 628, 634 (Mass. 2005).

As the party asserting the doctrine of issue preclusion, Ford has the burden of proving that all the requirements have been met.[20] "To meet this burden, the moving party must have pinpointed the exact issues litigated in the prior action and introduced a record revealing the controlling facts."[21] For an issue to be "essential to a judgment," it must have had a "bearing on the outcome of the case."[22] "If issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded."[23]

*a. Finality and privity*

The Probate Order was issued by a competent state court on motion of a party to the litigation.[24] Landon strenuously argues that the Motion is doomed because the Probate Order is currently on appeal, and therefore can have no preclusive effect in this Court. Ford points to the case of *O'Brien v. Hanover Insurance Company*,[25] decided by the Supreme Judicial Court of Massachusetts, which held that "a trial court judgment is final and has preclusive effect regardless of the fact that it is on appeal."[26] Beyond reiterating the requirement that Ford must hold a valid,

---

[20] *In re Porcaro*, 545 B.R. at 395.

[21] *Id.* at 395-96 (citing *In re Bradley*, 466 B.R. 582 (1st Cir. BAP 2012)).

[22] *Mullins v. Corcoran*, No. 1784CV02172BLS1, 2019 WL 6492593, at *3 (Mass. Super. Sept. 10, 2019) (unpublished) (citing *Jarosz v. Palmer*, 436 Mass. 526, 533, 766 N.E.2d 482, 489 (2002)).

[23] *Jarosz v. Palmer*, 766 N.E.2d at 489 (quoting Restatement (Second) of Judgments § 27 cmt. h (1982)).

[24] Mass. Gen. Laws Ann. ch. 231, § 6E (West) (the term "court," as used in Mass. Gen. Laws ch. 231, §§ 6E to 6G includes any probate court).

[25] 692 N.E.2d 39, 44 (Mass. 1998).

[26] *Id*. at 43.

final judgment, Landon provides no contrary authority.[27] Therefore, the Court finds that the Probate Order meets the requirement of finality under Massachusetts law, despite its current status on appeal. The Court also has little difficulty concluding that the parties to the Probate Action are the same parties to this proceeding, satisfying the second requirement for preclusion.

The remaining questions for this Court are whether the factual findings and legal conclusions Ford seeks to establish were actually litigated in the Probate Action, whether those findings and conclusions are sufficiently identical to the elements of § 523(a)(6) that they should be deemed established by this Court, and whether those issues were essential to the award of attorney's fees in the Probate Order.

*b. Actually litigated*

Landon does not dispute that the award of attorney's fees was actually litigated in the Probate Action. After the Probate Court entered an order dismissing Landon's complaint, Ford filed a motion for award of attorney's fees as a sanction against Landon, alleging that she had perpetrated a fraud on the court.[28] Landon, through counsel, filed an opposition and a cross-motion for sanctions against Ford.[29] Ford likewise filed an opposition to Landon's cross-motion.[30] The Probate Court amended its previous order dismissing the complaint when it issued the Probate Order, which included additional findings of fact and conclusions of law related specifically to the

---

[27] *See* Response to Motion for Summary Judgment, at Docket No. 15, at 3-4.

[28] Docket No. 44-9 at 208.

[29] *Id.* at 213.

[30] *Id.* at 238.

Fee Award as a sanction against Landon.[31] The issue of an award of attorney's fees as a sanction against Landon was properly before the Probate Court when it made its decision, with notice and participation by both parties. The fact that no separate evidentiary hearing or trial on the issue did not take place is immaterial.[32] Under Massachusetts law, an issue is actually litigated, for purposes of issue preclusion, if the issue was "'subject to an adversary presentation and consequent judgment' that was not 'a product of the parties' consent....'"[33] This Court finds the Fee Award was actually litigated for purposes of applying the doctrine of issue preclusion.

*c. Identical issues*

Ford bases his claim of non-dischargeability on § 523(a)(6) of the Bankruptcy Code, which provides that

> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt —
>
> > (6) for willful and malicious injury by the debtor to another entity or the property of another entity.[34]

"Nondischargeability under 523(a)(6) requires proof of two elements–that the injury is both willful and malicious."[35] In the Tenth Circuit, in order for conduct to be willful under § 523(a)(6), "the debtor must desire . . . [to cause] the consequences of his act or . . . believe [that] the consequences

---

[31] *Id.* at 246, 251-52.

[32] *Jarosz v. Palmer*, 766 N.E.2d at 488 (". . .an evidentiary hearing or trial is not required before issue preclusion can apply.").

[33] *Id.* (quoting *Keystone Shipping Co.* v. *New England Power Co.,* 109 F.3d 46, 52 (1st Cir. 1997)).

[34] § 523(a)(6).

[35] *In re Shore*, 317 B.R. 536, 542 (10th Cir. BAP 2004) (citing *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004)).

are substantially certain to result from it."[36] The test is subjective: the creditor must prove "that the debtor either *intend the resulting injury* or intentionally take action that is *substantially certain to cause the injury*."[37] "For a debtor's actions to be malicious, they have to be intentional, wrongful, and done without justification or excuse."[38] "In sum, the 'willful and malicious injury' exception to dischargeability in § 523(a)(6) turns on the state of mind of the debtor, who must have wished to cause injury or at least believed it was substantially certain to occur. When injury was 'neither desired nor in fact anticipated by the debtor,' it is outside the scope of the statute."[39] In making this evaluation, "the court must determine what the debtor knew or intended with respect to the consequences of his actions."[40] The United States Supreme Court has held that § 523(a)(6) is restricted to "intentional torts," i.e., those that "require that the actor intend 'the *consequences* of an act,' not simply 'the act itself.'"[41] In doing so, the Court found that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)."[42]

---

[36] *In re Moore*, 357 F.3d at 1129 (quoting *Mitsubishi Motors Credit of Am., Inc. v. Longley (In re Longley)*, 235 B.R. 651, 657 (10th Cir. BAP 1999)).

[37] *Id.* (emphasis added) (quoting *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1164 (11th Cir. 1995)).

[38] *In re Wormington*, 555 B.R. 794, 800 (Bankr. W.D. Okla. 2016).

[39] *In re Englehart*, No. 99-3339, 229 F.3d 1163, 2000 WL 1275614 (10th Cir. Sept. 8, 2000) (unpublished) (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998)).

[40] *In re Shore*, 317 B.R. at 542.

[41] *Kawaauhau v. Geiger*, 523 U.S. 57, 61–62 (1998) (citing Restatement (Second) of Torts § 8A, cmt. a, at 15 (1964)).

[42] *Id.* at 64.

The question before this Court is whether the findings and conclusions in the Probate Order are sufficient to establish the elements of "willful and malicious injury" under the standards set forth in § 523(a)(6). The Court finds they are not. The Court focuses on the section of the Probate Order that reads:

> The Court agrees that, given the Plaintiff's conduct in this case, an award of attorney's fees is reasonable and appropriate. . . . That said, the Plaintiff's conduct throughout the case was difficult, to say the least. . . .In the end she orchestrated a ploy, and a scene at the Courthouse, to avoid litigation. As a result, the Defendant's [sic] incurred unnecessary expenses to prepare for litigation and appear for trial.[43]

In this paragraph, the Probate Court found Landon "orchestrated a ploy, and a scene at the Courthouse," which establishes Landon intentionally caused the events on the day of April 27, 2017, which led to Ford's injury, i.e. she committed an intentional act. The Probate Court's finding that Ford "incurred unnecessary expenses to prepare for litigation and appear for trial," establishes that Ford suffered an injury as a result of Landon's actions.

With regard to Landon's state of mind, the Probate Court found that she orchestrated her ploy, including the scene at the courthouse, "to avoid litigation." The Probate Court did not elaborate on Landon's subjective reasons for avoiding litigation, or whether she did so with the *intent or substantial certainty* that it would harass Ford or cause unnecessary delay or needless increase in the cost of litigation. To say *any reasonable person* would have understood that such injury would result from her actions relies on an objective standard, which courts in this circuit have routinely rejected.[44] The Probate Court articulated the standard on which it awarded fees:

---

[43] Docket No. 44-9, at 251 (emphasis added).

[44] *See Panalis v. Moore (In re Moore),* 357 F.3d 1125, 1129 (10th Cir. 2004)); *In re Englehart*, 229 F.3d 1163, at *3; *In re Shore*, 317 B.R. 536, 542 (10th Cir. BAP 2004); *Mitsubishi Motors Credit of Am., Inc. v. Longley (In re Longley)*, 235 B.R. 651, 657 (10th Cir. BAP 1999).

> In making an award of attorney's fees, the Court must focus on various factors, including: "the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation, and ability of the attorney[s], the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases." Linthicum v. Archambault, 379 Mass. 381, 388-3889 [sic] (1979).[45]

The state of mind of the litigant is not among the factors required to be considered by the Probate Court. Ford must prove not only that Landon *intended to act* (orchestrated the ploy to avoid litigation), but that she also *intended to injure him* by her action (acted with the intent or substantial certainty that Ford would be injured by harassment or unnecessary delay). While a court sanction for misconduct in litigation can be the basis for a finding of non-dischargeability under § 523(a)(6), evidence of the debtor's state of mind is required.[46] Although a close call, viewing the facts in a light most favorable to Landon, as I must at the summary judgment stage, the Court finds that Ford has not presented sufficient evidence of Landon's subjective state of mind regarding his injury to satisfy the element of willfulness under § 523(a)(6).

Facing almost identical facts, in *Hoffman v. Anstead (In re Anstead)*,[47] the United States Bankruptcy Court for the Northern District of Ohio was asked to find that a sanction award by a probate court precluded the bankruptcy court's inquiry into the dischargeability of the award under § 523(a)(6). In that case, the court found that three acts by the debtor were frivolous, and that

---

[45] Probate Order, Docket No. 44-9, at 252.

[46] *See In re Suarez*, 400 B.R. 732, 737 (9th Cir. BAP 2009), ("Section 523(a)(6) does not make "contempt" sanctions nondischargeable *per se,* and neither does any other subpart of section 523(a). Whether contempt sanctions are nondischargeable accordingly depends not on whether they are labeled as 'contempt,' but on whether the conduct leading to them was "willful and malicious.") *aff'd,* 529 Fed. Appx. 832 (9th Cir. 2013) (unpublished).

[47] 436 B.R. 497 (Bankr. N.D. Ohio 2010).

plaintiffs "were adversely affected by the frivolous acts of" the debtor. The court's analysis is insightful:

> Sanctions awarded to a party in a prior proceeding based upon a debtor's frivolous conduct often serves as the basis to collaterally estop a debtor from litigating any issue regarding the dischargeability of the award in bankruptcy. *See, e.g., Raspanti v. Keaty (In re Keaty),* 397 F.3d 264 (5th Cir.2005) (award of sanctions for intentionally pursuing meritless litigation was nondischargeable debt). Yet, similar to the tort of conversion, *supra,* this is not an absolute, so that the doctrine of collateral estoppel will not necessarily apply to preclude a debtor from litigating matters pertaining to the dischargeability of an award of sanctions entered against him in a prior proceeding. *In re Wrenn,* 791 F.2d 1542, 1543–44 (11th Cir.1986) (frivolous lawsuit is not necessarily wrongful for purposes of 11 U.S.C. § 523(a)(6)). Instead, the salient issue, as always, regarding the application of the doctrine of collateral estoppel is whether the issue sought to be barred from litigation is identical to the issue actually litigated in the prior suit.
>
> Here, this necessary showing has not been demonstrated, with neither the findings made by the probate court, nor the statute upon which the probate court based its award of sanctions, lending themselves to a definitive conclusion that the issue sought to be litigated in this adversary, concerning the Debtor's intent, is identical to the issue decided by the probate court.
>
> First, and as was the situation with the first judgment, the second judgment rendered by the probate court for sanctions only went so far as to find that the Debtor's actions were frivolous for purposes of O.R.C. § 2323.51, and that the "Plaintiffs were adversely affected by the frivolous acts of" the Debtor. (Doc. No. 1, Ex. E.). No specific finding, however, was made by the court concerning the Debtor's subjective intent. Also, like with the first judgment, the state court was not required to make a finding regarding the Debtor's state of mind in order to impose sanctions.[48]

The *In re Anstead* court also analyzed the statute relied on by the probate court for its authority to award fees. Although some of the conduct described by the statute could qualify under the § 526(a)(6) definition of malicious, by no means all of the described conduct qualified. Without knowing which provisions the probate court relied on, the bankruptcy court was unable to find the

---

[48] *Id*. at 503.

specific intent to cause harm to the plaintiffs was actually litigated.[49] Finding that the sanction award judgment did not establish the debtor's state of mind to cause harm, the court declined to apply the doctrine of issue preclusion to the judgment.

*d. Essential to the judgment*

To the extent the Probate Order establishes facts directly related to the Fee Award, the Court finds they were essential to the judgment. Earlier versions of the Probate Order included extensive findings related to Landon's behavior in the Probate Action, where the court articulated its reasons for dismissing her complaint with prejudice. While those findings present an unflattering picture of Landon's behavior, it is not clear that they relate specifically to the Fee Award ultimately awarded to Ford. In fact, the Probate Court denied a request by Ford to award sanctions based on his defense of the entire Probate Action.[50] The final Probate Order addressed the matter of sanctions against Landon in favor of Ford specifically based on her behavior on the day of April 27, 2017. The Probate Court took care to make separate findings to support its grant of the Fee Award. Limiting its review to those findings, this Court finds they were essential to the Fee Award.

---

[49] *Id*. at 504. *See also In re Rackley*, 502 B.R. 615, 632 (Bankr. N.D. Ga. 2013); *In re Kalmerton*, No. 12-20544, 2012 WL 5386299, at *6 (Bankr. E.D. Wis. Nov. 1, 2012) ("All of this shows that the debtor acted intentionally, but it does not show that he acted maliciously, with intent to do unjustifiable harm to the [creditor], as opposed to furthering his own interests, as he argues. Intent of that nature requires a hearing, and summary judgment cannot be granted on this record.").

[50] Probate Order, Docket No. 44-9, at 246, 252 ("Accordingly, the Court orders the Defendant [sic] to pay legal fees to the Defendant in the amount of $11,635.00 for counsel's appearance in Court on April 27, 2017 and for six (6) hours of trial preparation. The request for additional fees is denied."). Despite the Probate Court's sloppy use of language, it is clear from the context of the order that the court is awarding fees to Ford to be paid by Landon.

The Court finds that under Massachusetts law, Ford has not met his burden to show that the Fee Order makes findings of fact that are equivalent to the elements he must prove under § 523(a)(6). The Court finds no evidence that the issue of Landon's specific intent to cause harm to Ford was actually litigated or determined by the Probate Court, thereby precluding the entry of summary judgment in Ford's favor. The doctrine of issue preclusion will not estop this Court from relitigating that issue. Therefore, summary judgment on the exception of the Fee Award from discharge must be denied.

**Conclusion**

The Motion for Summary Judgment is denied. Although the Court finds that the doctrine of issue preclusion will prevent the relitigation of certain factual issues in this proceeding, as described herein, genuine disputes of material fact remain with regard to Landon's willful and malicious injury of Ford. Those issues must be litigated in this forum.

A separate judgment consistent with this Memorandum Order is entered concurrently herewith.

Dated this 11th day of August, 2020.

BY THE COURT:

TERRENCE L. MICHAEL
UNITED STATES BANKRUPTCY JUDGE

7453v5